# IN THE COURT OF APPEALS OF IOWA

No. 22-1712
Filed August 30, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**RICKY GENE TITUS JR.,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Tamra Roberts, Judge.


A defendant appeals his conviction, challenging the sufficiency of the evidence. **AFFIRMED.**


Daniel M. Northfield, Urbandale, for appellant.

Brenna Bird, Attorney General, and Thomas E. Bakke and Olivia D. Brooks, Assistant Attorneys General, for appellee.


Considered by Greer, P.J., and Schumacher and Badding, JJ.

**BADDING, Judge.**

Ricky Titus Jr. and C.S. have been in a relationship for more than twenty years and share six children. On January 15, 2022, their teenage daughter called 911 and reported a domestic disturbance at their family home.

C.S. testified that she and Titus argued that day, but she couldn't remember what about. She reluctantly[1] explained Titus hit her with an "[o]pen hand" on the face and grabbed her by the throat during this argument. When asked whether being hit in the face hurt, C.S. answered: "I mean—I mean, I guess." She denied that Titus grabbing her by the throat caused any pain, although she acknowledged it left marks on her neck. She also denied putting her hands on Titus during the argument, but she agreed that she got in his face and yelled at him. On cross-examination, C.S. explained that she started the argument with Titus, which escalated as he was packing his stuff to leave. She also explained that when she got in Titus's face, she was "lunging" or "aggressive[ly] flinching" at him, "[l]ike, what the fuck are you going to do." She did not want the police called because she didn't think that she was in danger.

Three police officers responded to the domestic-disturbance report. Officer Gregory Lalla spoke separately with C.S., while two other officers stayed with Titus in the kitchen. Officer Lalla observed red abrasions on the left side of C.S.'s neck, which C.S. explained were from the incident.[2] He also gathered from her "general

---

[1] C.S. testified that she loves Titus, they are still in a relationship and live together, and she didn't want to attend the trial. When the State first asked whether things got physical, she tried to "plead the Fifth" but answered when directed by the court.
[2] Photographs showing the abrasions were admitted as evidence at trial.

body language and facial expressions" as she reenacted the altercation "that it was painful."

On these facts, a jury found Titus guilty of domestic abuse assault causing bodily injury. Titus now appeals that conviction, challenging the sufficiency of the evidence. We review his challenge for correction of errors at law, giving high deference to the verdict. *State v. Burns*, 988 N.W.2d 352, 370 (Iowa 2023). In doing so, we view "the evidence 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017) (citation omitted). We will uphold a conviction if the evidence can convince a rational jury that the defendant is guilty beyond a reasonable doubt. *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018).

Titus first argues the "[t]he evidence was lacking to show that [he] intended to cause the alleged victim any pain or injury." The jury was instructed the State had to prove one of three things to satisfy its burden for the first element of the crime, one being that Titus did an act intended to cause pain or injury to C.S. *See* Iowa Code § 708.1(2) (2022). We first note that Titus does not argue there was insufficient evidence to support the other two alternatives—that he did an act intended to either result in physical contact insulting or offensive to C.S. or place her in fear of immediate physical contact that would have been painful, injurious, insulting, or offensive. *See id.* "We could deem such challenges waived and affirm under one of these sub-alternatives." *State v. Hivento*, No. 21-1445, 2023 WL 2395729, at *10 (Iowa Ct. App. Mar. 8, 2023). But viewing the evidence in the light most favorable to the State, we summarily conclude a rational jury could find

that Titus hitting C.S. in the face and grabbing her by the throat were acts intended to cause pain or injury to C.S.

Second, Titus argues the evidence was insufficient to show C.S. suffered a bodily injury. The instructions defined "bodily injury" to mean "physical pain, illness or any impairment of physical condition." Titus contends the evidence was insufficient because C.S. testified it didn't hurt when Titus grabbed her by the throat and "[n]o medical evidence was given as to whether any alleged marks were old." But Titus ignores that C.S. provided an affirmative response when asked whether being hit in the face was painful. And she told the police that the abrasions on her neck were from the incident in question. This was substantial evidence to support bodily injury. *See State v. Taylor*, 689 N.W.2d 116, 136 (Iowa 2004) (finding evidence sufficient to support physical-pain bodily injury given bruises and scratches despite victim's claim that she was not injured by husband's assault); *State v. Sallay*, No. 19-1538, 2020 WL 5650496, at *2 (Iowa Ct. App. Sept. 23, 2020) (concluding "black eye, abrasions, and pain" were sufficient to show bodily injury).

That leaves us with Titus's claim that the State failed to show the "striking of [C.S.] with an 'open hand'" was not justified. The instructions did burden the State with proving Titus "acted without justification." *See State v. Fordyce*, 940 N.W.2d 419, 426 (Iowa 2020). Titus suggests that he was entitled to slap C.S. across the face in order to get her out of his face, arguing: "[T]he alleged victim admitted to getting in . . . [his] face, and admitted to being the aggressor. . . . Any striking of the alleged victim with an 'open hand' was certainly justified considering her aggressive moves on [him]." As the State points out, "this argument fails to

acknowledge Titus did not just strike the victim in the face. He also grabbed her by the throat hard enough to leave marks."[3] *See State v. Hall*, No. 15-0628, 2016 WL 2748358, at *4 (Iowa Ct. App. May 11, 2016) (finding that the jury was entitled to conclude the defendant "escalated the level of force beyond what was reasonable under the circumstances"). Titus also does not address the fact that while C.S. may have "aggressively" lunged or flinched at him, she never touched him. The jury could have rationally concluded that Titus "committed an assault before any need for self-defense arose," which "amounts to substantial evidence of an assault, without justification." *State v. Renaud*, No. 05-0537, 2006 WL 1229994, at *1 (Iowa Ct. App. Apr. 26, 2006).

Finding the challenged elements to be supported by substantial evidence, we affirm.

**AFFIRMED.**

---

[3] The jury was instructed that "[r]easonable force is only the amount of force a reasonable person would find necessary to use under the circumstances to prevent injury" and that if the State proved Titus "used unreasonable force under the circumstances," his use of force was not justified. *See* Iowa Code § 704.1; *State v. Ellison*, 985 N.W.2d 473, 478 (Iowa 2023).